UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FREEDOM WATCH, INC.,**  Plaintiff,  v.  **UNITED STATES DEPARTMENT OF STATE,** *et al.*,  Defendants. | Civil Action No. 14-1832 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Freedom Watch, Inc., filed a Freedom of Information Act request with the United States Department of State, in which it sought documents relating to certain waivers – granted pursuant to a specific statute or executive order – to countries doing business with Iran. After a thorough and comprehensive search, State indicated that it possessed no responsive documents. Believing that the Department's search was inadequate, Freedom Watch then brought this FOIA suit, and State has now moved for summary judgment. As the search was plainly sufficient and as Plaintiff's arguments to the contrary border on the frivolous, the Court will grant the Motion.

**I.   Background**

On May 21, 2013, Plaintiff submitted the following FOIA request to the U.S. State and Treasury Departments:

> Any and all documents that refer or relate in any way to the final decisions to grant waivers to all countries and other interests doing business with the Islamic Republic of Iran pursuant to the Comprehensive Iran Sanctions, Accountability, and Divestment Act, 22 U.S.C. § 8501 et. [*sic*] seq. or Executive Order 13553.

1

Mot., First Declaration of John F. Hackett, Exh. 1 (Letter) at 1.  Upon receipt of a FOIA request, the Office of Information Programs and Services (IPS) at State first "evaluates the request to determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested."  Hackett Decl., ¶ 7.  In this instance, IPS concluded that there were eleven offices or records systems in which Plaintiff's documents might conceivably be found: "the Central Foreign Policy Records, the Offices of the Secretary of State, the Office of the Deputy Secretary of State, the Office of the Coordinator for Sanctions Policy, the Executive Secretariat, the Office of the Under Secretary for Political Affairs, the Offices of the Under Secretary for Economic Growth, Energy, and the Environment, the Office of the Legal Advisor, the Bureau of Economic and Business Affairs, the Bureau of Energy Resources, and the Bureau of Near Eastern Affairs."  Id., ¶ 9.

      John F. Hackett, Acting Director of IPS, submitted a declaration explaining in detail how searches were carried out in each of these eleven components.  For example, keyword searches were employed in the Central Foreign Policy Records system, which "contains over 30 million records of a substantive nature."  Id., ¶ 10.  Searches in the Executive Secretariat were considerably more involved.  A Management Analyst searched three different electronic records systems, see id., ¶13; numerous staff conducted email searches, see id., ¶ 14; and, "[t]o guard against the possibility that a particular document was overlooked and not scanned . . . , paper files for each principal's office were searched by the Special Assistants and Staff Assistants assigned to that office."  Id., ¶ 15.  Staff also "manually searched the paper files" of different departments.  See id.  Searches in the Office of the Under Secretary for Economic Growth, Energy, and the Environment, as well as the Office of the Legal Advisor, similarly involved a review of electronic and paper files.  See id., ¶¶ 17, 20.  In the Bureau of Economic and Business

Affairs, *inter alia*, "[e]ach member of the Iran Sanctions Team performed searches of their e-mail messages . . . and paper files for records concerning Iran waivers." Id., ¶ 24. Searches in other offices were just as thorough. See id., ¶¶ 10-29. No responsive documents, however, were located in any of the eleven component offices. See id., ¶ 30.

As diligent as this search appears, Plaintiff was unconvinced, and it initially brought this action in the Middle District of Florida on September 4, 2013, against both State and Treasury. See ECF No. 1 (Complaint). Judge Anne C. Conway of that district subsequently dismissed the latter agency from the case on July 2, 2014. See ECF No. 22 (Order). State then moved for summary judgment on July 10, and briefing was completed on September 12. See ECF Nos. 24, 28, 32. On October 27, before ruling on the Motion, Judge Conway transferred the case to the District of Columbia on venue grounds. Freedom Watch, apparently, had "deliberately misrepresented the basis for venue in this case." ECF No. 35 (Order) at 5. Judge Conway expressed her further displeasure with "Plaintiff's 'say one thing and do another' approach to this litigation," which had resulted in "Plaintiff's representations to the Court carry[ing] little, if any water." Id. at 6.

Upon receipt of the case, this Court held a status conference on December 10, 2014, at which the parties indicated that the Court could resolve the pending Motion for Summary Judgment and that no further briefing was required. That invitation is now accepted.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the

substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

### III. Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361

(1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

In the Motion now properly teed up, there is one central question presented: Was State's search for responsive documents adequate? In providing an answer, the Court first considers the Department's explanation of the contours of its search. It next addresses each of Plaintiff's specific objections.

    A. <u>Adequacy of the Search</u>

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-

Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id.

To establish the sufficiency of its search here, State submitted two declarations from John F. Hackett, its Acting Director of IPS and the "official immediately responsible for responding to [FOIA requests]." First Hackett Decl., ¶ 1; Reply, Exh. A (Second Declaration of John F. Hackett). As the Court has previously explained, the first declaration narrates in considerable detail the steps each of eleven State components took to locate responsive records. The second declaration supplements this narrative by describing how IPS "sought and obtained advice from subject matter experts in offices working on sanctions against Iran" "to ensure that it had used the appropriate search terms in its search of the Central File." Hackett Second Decl., ¶ 5. IPS, Hackett also explains, deployed "input from the Department's leading experts on Iran sanctions" to frame its searches. See id., ¶ 6.

Given the extensive efforts already detailed, see Section I, *supra*, the Court believes that State has easily cleared the bar for an adequate search. It examined the files in eleven different components, utilized appropriate word searches, and also combed through paper files. Although the Department ultimately came up empty handed, even Plaintiff concedes that this was a

"massive internal search," and it does not question "the amount of time and effort that apparently went into the search." Opp. at 2. Nor does the fact that no responsive document was located cast doubt on the search's comprehensiveness. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (emphasis added; citation omitted). State has done all that is required of it.

    B.  Plaintiff's Objections

Its concessions on the scope of the search notwithstanding, Freedom Watch poses some very specific objections. First, Plaintiff is incredulous that State found no responsive documents when Plaintiff itself can locate four responsive press releases from State's website "within a few minutes." Opp. at 1-2. This is damning evidence indeed – or is it? It turns out, as the government correctly rejoins, that not one of these press releases is actually responsive to Plaintiff's FOIA request. This is because none relates to either the Comprehensive Iran Sanctions, Accountability, and Divestment Act (CISADA) or Executive Order 13533, which lie at the heart of the request. See Opp., Exh. 3 (four press releases). All of these documents, instead, discuss a separate statute, the National Defense Authorization Act of 2012 (NDAA), and sanctions thereunder. See id. In fact, Plaintiff's own declarant admits that he "noticed that the description of the legal basis for the sanctions was different in Hillary Clinton's press releases and in the Freedom Watch FOIA." Opp., Exh. 2 (Declaration of Jonathon Moseley), ¶ 7. In any event, even if the press releases were responsive, identifying a handful of documents that an agency failed to uncover does not, in itself, demonstrate that a search was inadequate. See Boyd v. Criminal Div. of Dep't of Justice, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search.").

7

Plaintiff next nimbly pivots away from the statutes it actually named in its FOIA request and argues that "the U.S. State Department failed to understand that a waiver under Section 1245 of the [NDAA] is the same thing or more or less the same as a waiver under [CISADA]." Opp. at 8. The declaration Freedom Watch submits similarly describes the statutes as substantively interchangeable. See Moseley Decl., ¶¶ 7-9. In other words, State was somehow supposed to divine that a FOIA request for documents about waivers pursuant to a specific statute should also have been construed as seeking documents relating to an entirely different statute. This is not a serious argument. See, e.g., Voinche v. FBI, 1997 WL 411685, at *1 (D.C. Cir. 1997) (agency not obliged to "search for records beyond the scope of the request").

Equally unpersuasive is Freedom Watch's contention that State "did not conduct a search by actually talking to anyone who might know about the subject matter involved." Opp. at 2. Plaintiff asserts that the "process . . . appears to have been designed to studiously avoid interacting with human beings." Id. at 6. As State's initial declaration did not describe a wordless turnover of the search to robots or droids, the Court is perplexed about the basis of Plaintiff's position. Hackett not only explains how human beings in each of the eleven components went about their searches, but he also talks about the sizeable number of people involved in the searches. See First Hackett Decl., ¶¶ 10-29. Were this not enough, Hackett submitted a second declaration that sets forth how IPS "sought and obtained advice from subject matter experts in offices working on sanctions against Iran" to ensure its search of the Central File was done appropriately. See Second Hackett Decl., ¶ 5. State has plainly carried its burden of conducting an adequate search.

As a last gasp, Freedom Watch urges the Court to permit discovery, including the deposition of Hackett and others who conducted the search. See Opp. at 10-11. To begin with,

"[d]iscovery is generally inappropriate in a FOIA case." Govt. Accountability Project v. U.S. Dep't of Justice, 852 F. Supp. 2d 14, 27 n.5 (D.D.C. 2012) (citation and internal quotation marks omitted). More important, Plaintiff here has offered no valid reason to question the good faith or efficacy of State's search. See Military Audit Project v. Casey, 656 F.2d 724, 751 (D.C. Cir. 1981) (affirming denial of discovery where appellants had not "succeeded in raising substantial questions . . . concerning the substantive content of the affidavits relied upon by defendants") (ellipsis in original; internal quotation marks and footnote omitted). The case will end here.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 8, 2015