UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FREEDOM WATCH, INC.,**<br><br>    **Plaintiff,**<br><br>         v.<br><br>**UNITED STATES DEPARTMENT OF STATE,** *et al.***,**<br><br>    **Defendants.** | Civil Action No.  14-1832 (JEB) |

**MEMORANDUM OPINION**

This Freedom of Information Act case seeks documents relating to a type of sanctions waiver the U.S. State Department granted to certain countries doing business with Iran.  On January 8, 2015, this Court granted State's Motion for Summary Judgment, concluding that it had adequately searched, albeit unsuccessfully, for such records sought by Plaintiff Freedom Watch.  See Freedom Watch v. U.S. Dep't of State, 77 F. Supp. 3d 177 (D.D.C. 2015).  During the pendency of Plaintiff's appeal, it was publicly revealed that former Secretary of State Hillary Clinton had used a personal email and server to conduct Department business; the Court of Appeals, consequently, remanded the case for this Court to oversee State's search of those emails for responsive documents.  That search having been completed without success, State now renews its Motion for Summary Judgment.  Plaintiff's Opposition thereto may be characterized by Yogi Berra's immortal line, "It's *déjà vu* all over again."  This is because it essentially reiterates the arguments that the Court previously found wanting.  Unsurprisingly, the same result obtains this time around.

1

**I.      Background**

On May 21, 2013, Plaintiff submitted the following FOIA request to the U.S. State and Treasury Departments:

> Any and all documents that refer or relate in any way to the final decisions to grant waivers to all countries and other interests doing business with the Islamic Republic of Iran pursuant to the Comprehensive Iran Sanctions, Accountability, and Divestment Act [CISADA], 22 U.S.C. § 8501 et[] seq. or Executive Order 13553.

Mot. (ECF No. 57), Declaration of John F. Hackett, Exh. 1 (Letter) at 2. In its prior Opinion, this Court described the detailed steps that State took upon receipt of this FOIA request (Treasury having been dismissed), which included the search of eleven separate offices or records systems. See Freedom Watch, 77 F. Supp. 3d at 179-80. Plaintiff itself, the Court noted, "concedes that this was a 'massive internal search,' and it does not question 'the amount of time and effort that apparently went into the search.'" Id. at 182 (quoting First Opp. at 2).

In granting summary judgment on the adequacy of the search – the only issue Plaintiff raised then or here − the Court batted away several challenges, finding that: (1) four press releases trumpeted by Freedom Watch as having not been produced were, in actuality, not responsive to the request; (2) Defendant was not required to also search for documents relating to waivers issued under the National Defense Authorization Act of 2012 (NDAA), where the request exclusively cited CISADA and Executive Order 13553; (3) State had, *pace* Plaintiff, consulted with appropriate individuals in conducting the search; and (4) discovery was not warranted. Id. at 182-83.

Plaintiff appealed, and fairly soon thereafter, news reports about Secretary Clinton's private email account and server appeared. Seizing on this development, Freedom Watch asked the Court of Appeals to remand the matter for discovery and an order to show cause why Clinton

should not be held in contempt. The D.C. Circuit ultimately ordered "that the case be remanded for the district court to manage record development and oversee the search of the former Secretary's emails for records responsive to Freedom Watch's FOIA request." ECF No. 54 (Mandate) (citation omitted). The Court of Appeals further ordered that "the motion for discovery and other relief be denied without prejudice to Freedom Watch seeking the same relief from the district court on remand." Id.

The Court immediately set a status conference, at which it ordered the government to search the emails in its possession and advise Plaintiff of the results. See Minute Orders of Nov. 3, 2015, and Nov. 24, 2015. After Plaintiff's counsel failed to appear at the next scheduled status conference, the Court set a briefing schedule for State's renewed Motion for Summary Judgment. See Minute Order of Jan. 4, 2016. That briefing is now complete.

In its current Motion, State explains the steps it took to search the Clinton emails for responsive records after the case had returned from the Court of Appeals. According to John F. Hackett, the Director of the Office of Information Programs and Services (IPS) at State, upon remand, "the Office of the Executive Secretariat Staff ('S/ES-S') conducted a supplemental search of the[]" emails. Hackett Decl., ¶ 10. These consisted of "approximately 30,000 emails, comprising approximately 52,455 pages." Id., ¶ 11 (footnote omitted). Hackett explains:

> An S/ES-S Management Analyst with knowledge of both the request and the relevant records system conducted a full-text search of agency records in the Clinton email collection using a combination of the Windows Explorer search function and the Adobe Reader search function. The analyst searched these electronic records using the search terms: "Iran", "Sanctions", "13553", "Comprehensive Iran Sanctions, Accountability, and Divestment Act", and "CISADA" as separate search terms in combination with "Grant Waivers" or "Business" for the time period of June 1, 2010 to February 6, 2014. These searches located no responsive records.

3

Id., ¶ 14 (emphasis added).  Freedom Watch believes Defendant's efforts were insufficient.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

**III.    Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Just as in the prior Motion for Summary Judgment, only one question exists here: Was State's search for responsive materials contained in the Clinton emails adequate?  In providing an answer, the Court first considers the Department's explanation and then examines each of Plaintiff's specific objections.

A. Adequacy of the Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  Id.

To establish the sufficiency of its search here, State submitted a declaration from John F. Hackett, its IPS Director and the "official immediately responsible for responding to [FOIA requests]."  Hackett Decl., ¶ 1.  As set forth above, Hackett explains the steps Defendant took to locate responsive records.  See Section I, *supra*.  Unlike in many FOIA cases, there can be no dispute about the propriety of where State looked for documents.  In other words, because the case was remanded with instructions about searching only Secretary Clinton's emails, see Mandate at 1, Freedom Watch cannot complain that Defendant should have examined other

records systems for responsive material. The only live question, therefore, relates to the manner in which the emails were searched.

As Hackett details, "An S/ES-S Management Analyst with knowledge of both the request and the relevant records system conducted a full-text search of agency records in the Clinton email collection using a combination of the Windows Explorer search function and the Adobe Reader search function." Hackett Decl., ¶ 14. Hackett further describes the specific search terms used: "Iran," "Sanctions," "13553," "Comprehensive Iran Sanctions, Accountability, and Divestment Act," and "CISADA," employed "as separate search terms in combination with 'Grant Waivers' or 'Business' for the time period of June 1, 2010 to February 6, 2014." Id. Such method of search appears entirely reasonable to the Court. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (emphasis added). This is particularly so because Plaintiff does not challenge either the search terms themselves or the date range employed. See Thompson v. U.S. Dep't of Justice, No. 14-1786, 2015 WL 7303519, at *5 (D.D.C. Nov. 19, 2015) ("But because Plaintiff offers no evidence indicating that another record system or search term might have yielded additional responsive materials, he has proffered no basis on which to challenge the reasonableness or thoroughness of this search.") (citation omitted). State has, at first blush, thus accomplished the purpose of the remand.

B. Plaintiff's Objections

Freedom Watch believes otherwise. In challenging the search, it offers a series of objections, almost all of which repeat those positions the Court found infirm in its earlier Opinion.

7

Plaintiff's central argument does not take issue with the mechanics of the search; Freedom Watch, instead, maintains that State's search must be deficient simply because it uncovered no responsive documents. (It is worth noting that State did not say that it found no documents at all in its search, just that none was responsive.) Plaintiff decries a situation in which State has "issue[d] at least a dozen waivers of sanctions against doing business with Iran, [and] yet ha[s] no documents whatsoever on this very serious, very complex, very significant issue." Opp. at 1 (emphasis omitted). "Under these circumstances, one must find the Defendant's declaration [that no responsive documents were found] to be simply impossible to believe." Id. at 2. For support, Plaintiff cites myriad press releases and newspaper articles in which Secretary Clinton announced waivers of sanctions on countries doing business with Iran. See id. at 2-3. As the Court commented in connection with a related issue in its prior Opinion: "This is damning evidence indeed – or is it?" Freedom Watch, 77 F. Supp. 3d at 182.

It turns out, just as was the case in the earlier grant of summary judgment, that Plaintiff has confused different statutory authority. As Defendant explains, "The news reports and press releases Plaintiff relies on do not address CISADA or Executive Order 13553, let alone waivers issued under those authorities. Rather, and without exception, the materials discuss Section 1245 of the National Defense Authorization Act of 2012 (NDAA) and certain exceptions to sanctions imposed under that statute." Reply at 3 (citing press releases and articles attached as exhibits to Plaintiff's Opposition). Indeed, the Court's review manifests that not one of the attached nine press releases or news articles mentions CISADA or 13533, and most explicitly describe NDAA as the operating statute. See Opp., Exh. A at ECF p. 3; Exh. C at 1; Exh. E at 1; Exh. F at 1; Exh. G at 1; Exh. H at 1. Having explained the distinction in its prior Opinion, the Court is surprised to see Plaintiff ignoring it in its briefing here.

As Plaintiff also relies on the mislabeled press releases and news articles as the basis for its next argument – *viz.*, that discovery is necessary here – the Court may easily deny such a remedy. As it stated last time around:

> To begin with, "[d]iscovery is generally inappropriate in a FOIA case." Govt. Accountability Project v. U.S. Dep't of Justice, 852 F. Supp. 2d 14, 27 n.5 (D.D.C. 2012) (citation and internal quotation marks omitted). More important, Plaintiff here has offered no valid reason to question the good faith or efficacy of State's search. See Military Audit Project v. Casey, 656 F.2d 724, 751 (D.C. Cir. 1981) (affirming denial of discovery where appellants had not "succeeded in raising substantial questions . . . concerning the substantive content of the affidavits relied upon by defendants") (ellipsis in original; internal quotation marks and footnote omitted).

Freedom Watch, 77 F. Supp. at 183. The same reasoning stands.

Plaintiff's next line of attack consists of copying a couple of pages from its prior Opposition and then pasting them into its current one with almost no changes, even though the points raised therein have either already been rejected by the Court or do not apply to this search. Compare ECF No. 28-1 (Prior Opp.) at 6-8 with Opp. at 11-12. It complains, for example, that State should have asked around within the Department to see "if those people who actually do [the relevant] work have any relevant documents." Opp. at 12. That suggestion makes no sense, as this search is limited to a fixed set of emails and could not involve canvassing assorted offices within the Department. Similarly, Freedom Watch again points to four "responsive documents on the Defendant's website," showing that these should have been uncovered in a thorough search. The Court, as Plaintiff well remembers, previously addressed and rejected this precise contention, which, given the copying, was originally raised in the earlier briefing. See Freedom Watch, 77 F. Supp. 3d at 182. This sloppy work may explain the response of Judge Anne C. Conway of the Middle District of Florida, from whom the case was received on venue transfer, who expressed her displeasure with "Plaintiff's 'say one thing and do another' approach to this

litigation," which had resulted in "Plaintiff's representations to the Court carry[ing] little, if any water." ECF No. 35 (Order) at 6. Freedom Watch's quest thus ends here.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 15, 2016